J-S16015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF J.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF M.F., PATERNAL GRANDMOTHER | |
| Appellant | No. 2751 EDA 2015 |

Appeal from the Order Entered August 7, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-000123402014

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MARCH 22, 2016**

M.F. ("Paternal Grandmother") appeals, *pro se*, from a permanency review order entered August 7, 2015 in the Philadelphia County Court of Common Pleas, Juvenile Division, that adopted the recommendation of a master to remove her grandson, J.C. ("Child"), born in April of 2014, from her home.  We dismiss the appeal.

On May 21, 2014, the Philadelphia Department of Human Services ("DHS") filed a petition to adjudicate Child dependent.  On July 1, 2014, the trial court adjudicated Child dependent, transferred legal custody of Child to DHS, and placed Child in kinship foster care with Paternal Grandmother.  The trial court directed that the placement goal for Child was to return to parent or guardian.  Additionally, on that same date, the trial court entered an aggravated circumstances order, as the parents' rights had previously

been involuntarily terminated as to another child. In the order, the trial court provided that continued efforts should be made toward reunification.

The trial court held a permanency review hearing on November 4, 2014. In a permanency review order entered on that same date, the trial court found that both parents were non-compliant with the permanency plan. As a result, the court ordered exploration of the parents voluntarily relinquishing their parental rights, and additionally ordered that reasonable efforts to reunify Child with the parents were not required.

On December 19, 2014, DHS filed a petition for a goal change to adoption. Subsequently, in a permanency review order entered on February 3, 2015, the trial court changed the permanency goal to adoption, with reunification ruled out as a feasible option.

Master Alexis Ciccone presided over permanency review hearings on May 1, 2015, June 5, 2015, July 24, 2015,[1] and August 7, 2015. At the master's permanency review hearing on August 7, 2015, DHS requested Child's removal from Paternal Grandmother's home. DHS presented the testimony of Katie Kiehle, the adoption worker from Northeast Treatment Centers ("NET"); Vivian Ebersole, a DHS caseworker; Patience Capote, a Community Umbrella Agency case manager through Turning Points for

---

[1] This hearing, which was scheduled due to a request for an emergency hearing for judicial removal of Child, had to be continued due to technical difficulties with the digital recorder. Master's Recommendation - Continuance and Order, 7/24/15.

Children; and Lisa Marlana Lugo, a Family Findings Case Manager for Turning Points for Children. Paternal Grandmother also testified.

At the close of the master's hearing, DHS argued that Child should be removed from Paternal Grandmother's home, as NET, the agency preparing the family profile, was unable to approve the profile. DHS noted issues with finances, police activity, assistance in caring for Child, attendance at scheduled appointments, family history with DHS, and issues with Paternal Grandmother's identity matters.[2] N.T. 8/7/15, at 42-46. The Child Advocate joined in this argument. *Id.* at 46-47. In opposition, Paternal Grandmother averred that she would never leave Child alone, and questioned removing Child from the only family he knows. *Id.* at 49. Immediately after the hearing, Master Ciccone recommended that Child should be removed from Paternal Grandmother's home. The trial court adopted the master's recommendation on that same date.

On September 3, 2015, Paternal Grandmother filed a timely notice of appeal, *pro se*, and included a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her concise statement, Paternal Grandmother stated:

> I feel I was wrongfully mislead [sic] and told [Child] would
> return to me with the outcome of a situation that was beyond

---

[2] Testimony at the master's hearing revealed that, in the past, Paternal Grandmother had used multiple social security numbers, dates of birth, and places of birth. *See* N.T. 8/7/15, at 42-46.

my control I would [sic] and have never put my grandson [Child]
I would like to be able to explain my concerns.  I am in the
process of getting a stay away order towards my daughter who
defended herself and myself  I had no control over her actions
and I am getting restraining order against biological mother and
father of [Child] my grandson is my reason for waking up in the
morning I am very confused about this whole situation and my
grandson and I are paying for grown up individuals [sic] wrong
choices.

Subsequently, Paternal Grandmother filed with this Court a two-page,

handwritten brief essentially stating the same argument.

Our Supreme Court set forth our standard of review for dependency

cases as follows:

> [T]he standard of review in dependency cases requires an
> appellate court to accept the findings of fact and credibility
> determinations of the trial court if they are supported by the
> record, but does not require the appellate court to accept the
> lower court's inferences or conclusions of law.  Accordingly, we
> review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010).  *See also In re*

*A.B.*, 19 A.3d 1084, 1093-1094 (Pa. Super. 2011) (stating that this Court

will not infringe upon the juvenile court's credibility determinations).

We note initially that the trial court did not address the merits of

Paternal Grandmother's argument in its Pa.R.A.P. 1925(a) Opinion.  Instead,

the trial court suggested that Paternal Grandmother had waived all issues on

appeal by her failure to file any exceptions to the master's recommendation

within three days of her receipt of the recommendation, pursuant to

Pennsylvania Rule of Juvenile Court Procedure (Pa.R.J.C.P.) 1911.[3]  The trial

court reasoned that because Paternal Grandmother filed an appeal instead of

exceptions in accordance with Pa.R.J.C.P. 1191, Paternal Grandmother

deprived the trial court of the ability to issue an order that would be

reviewable on appeal.  Trial Court Opinion, 10/12/15, at 2-3.

The trial court further suggested that Paternal Grandmother waived all

issues by filing an insufficient concise statement of errors complained of on

appeal.  The court found Paternal Grandmother's concise statement was "too

vague as to afford the trial court the opportunity to address her issues."

Trial Court Opinion, 10/12/15, at 4.  The court continued to explain:

> Appellant never avers any specific claim of error.  Thus, the trial
> court has not been afforded an opportunity to respond as the
> Appellant has not fulfilled her duty to file a concise statement.

*Id.*

In its brief, DHS disagrees with the trial court's suggestion regarding

Paternal Grandmother's waiver of all issues because of her failure to file

exceptions, asserting that the trial court adopted the master's

recommendation on the same day as the master's hearing and

---

[3] Pennsylvania Rule of Juvenile Court Procedure 1191(C) provides that a party may challenge a master's recommendation by filing a motion requesting a rehearing before a judge, and averring the reasons for the challenge within three days of receipt of the recommendation.

recommendation. DHS asserts, however, that Paternal Grandmother has waived all issues on appeal due to her deficient concise statement. DHS further alleges that Paternal Grandmother's brief fails to comply with the requirements of the Pennsylvania Rules of Appellate Procedure, and that we should dismiss her appeal on that basis. DHS Brief at 9-16.

We need not rule on whether the trial court's acceptance of the master's recommendation on the same day the master issued the recommendation precluded Paternal Grandmother from filing exceptions because she failed to raise this procedural issue in either her concise statement of errors complained of on appeal or her appellate brief. As such, Paternal Grandmother has waived any challenge relating to her obligation to file exceptions under Pa.R.J.C.P. 1191. *Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (finding waiver where an issue is not included in both a concise statement of errors complained of on appeal and statement of questions involved section of the brief). Although Paternal Grandmother is proceeding *pro se*, we will not act as her lawyer. *See Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa. Super. 1996); *Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005). Consequently, we proceed with our analysis of the sufficiency of Paternal Grandmother's concise statement and brief.

Where a concise statement of errors complained of on appeal does not sufficiently identify the issues raised on appeal, we have found waiver of all issues on appeal, explaining as follows:

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [**Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that **Lord** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal. In the instant case, Appellant's Concise Statement was not specific enough for the trial court to identify and address the issue Appellant wished to raise on appeal. As such, the court did not address it. Because Appellant's vague Concise Statement has hampered appellate review, it is waived.

**Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa. Super. 2006) (quoting **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa. Super. 2001)).

Upon review, we are constrained to agree with the trial court and DHS that Paternal Grandmother's statement is merely a narrative paragraph and is devoid of any specific allegation of error. Paternal Grandmother instead vaguely indicates her confusion and desire to explain her concerns as she was "wrongfully mislead [sic] and told [Child] would return to [her] with the outcome of a situation that was beyond [her] control." Concise Statement of Errors Complained of on Appeal, 9/3/15.

We are also constrained to agree with DHS that Paternal Grandmother's brief is defective. Pennsylvania Rule of Appellate Procedure 2111 provides as follows:

**(a)  General rule.-**The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:

(1)    Statement of jurisdiction.
(2)    Order or other determination in question.
(3)    Statement of both the scope of review and the standard of review.
(4)    Statement of the questions involved.
(5)    Statement of the case.
(6)    Summary of argument.
(7)    Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable.
(8)    Argument for appellant.
(9)    A short conclusion stating the precise relief sought.
(10)   The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.
(11)   In the Superior Court, a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Rule 1925(b), or an averment that no order requiring a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered.

**(b)  Opinions below.-**There shall be appended to the brief a copy of any opinions delivered by any court or other government unit below relating to the order or other determination under review, if pertinent to the questions involved.  If an opinion has been reported, that fact and the appropriate citation shall also be set forth.

**(c)  Pleadings.-**When pursuant to Rule 2151(c) (original hearing cases) the parties are not required to reproduce the record, and the questions presented involve an issue raised by

the pleadings, a copy of the relevant pleadings in the case shall be appended to the brief.

**(d) Brief of the Appellant.-**In the Superior Court, there shall be appended to the brief of the appellant a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Pa.R.A.P. 1925(b). If the trial court has not entered an order directing the filing of such a statement, the brief shall contain an averment that no order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered by the trial court.

Rules 2114 through 2119 further set forth in great detail the specifics as to each of the required sections of the brief. **See** Pa.R.A.P. 2114-2119. Rule 2101 provides as follows with regard to non-compliance:

Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

We have held that an appeal may be dismissed and/or quashed where the deficiencies of the appellant's brief are such that we are unable to conduct a meaningful review. **Karn v. Quick & Reilly, Incorp.**, 912 A.2d 329, 337 (Pa. Super. 2006); **Branch Banking & Trust v. Gesiorski**, 904 A.2d 939, 943 (Pa. Super. 2006); **Commonwealth v. Maris**, 629 A.2d 1014, 1017 (Pa. Super. 1993). Of particular importance, an appellant must include a Statement of Questions Involved. **Branch Banking & Trust**, 904 A.2d at 94; **Maris,** 629 A.2d at 1016. As we indicated in **Maris**:

> "This Court possesses discretionary authority to quash, dismiss or deny allowance of appeal based upon the substantial defects of appellant's brief. Pa.R.A.P. 2101." *Commonwealth v. Ely*, 381 Pa.Super. 510, 513, 554 A.2d 118, 119 (1989). . . . "We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review a Court will not consider the merits thereof." *Sanford*, supra, 299 Pa.Super. at 67, 445 A.2d at 150. . . .

*Maris*, 629 A.2d at 1017.

Moreover, we cannot accord special relief to an appellant merely because of her *pro se* status. *See id*. As this Court stated in *Commonwealth v. Adams*, *supra*:

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*Adams*, 882 A.2d at 498.

Here, as in *Maris*, Paternal Grandmother's brief fails to include a statement of jurisdiction, order or other determination in question, summary of argument, or statement of questions involved, and the statement of the case and argument sections are lacking. *See Maris,* 629 A.2d at 1015-17. Likewise, Paternal Grandmother's brief presents us with the same situation as in *Karn*, where we also deemed the appellant's issues waived due to an improper Rule 1925(b) concise statement. In *Karn*, the appellant's brief did not include statements of the scope and standard of review, a short conclusion stating the precise relief sought, or a copy of the statement of

errors complained of on appeal. Moreover, the statement of the questions involved and argument sections of the appellant's brief did not conform to the Rules of Appellate Procedure and failed to cite appropriate legal authority. *See Karn*, 912 A.2d at 337.

Similarly, in this matter, Paternal Grandmother's brief consists of a two-page, hand-written narrative, along with the trial court opinion. Paternal Grandmother largely references the importance of keeping family together, and states that her grandson was happy and healthy, and doing well. However, aside from including the trial court opinion, this submission fails to follow the format of, and fails to include the required information for, an appellate brief, thus fatally hampering any meaningful review. *See Maris*, 629 A.2d at 1017. Despite our efforts to liberally construe Paternal Grandmother's brief, we are constrained to find that her brief is defective and subjects this appeal to dismissal. *See Rivera*, 685 A.2d at 1013.

Even if we were to review the trial court's decision, we observe that the record in this matter supports the trial court's adoption of the master's finding that it was not in the best interests of Child to remain in the home of Paternal Grandmother, and that Child should be removed.

Regarding the placement of a child, a panel of this Court stated:

When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa.Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent. . . the issues of custody and continuation of foster care are

determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to 'provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter.' 42 Pa.C.S. § 6301(b)(1.1). Indeed, '[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child.' *In re E.F.V.*, 315 Pa.Super. 246, 461 A.2d 1263, 1267 (1983).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. 42 Pa.C.S.A. § 6351(a); *In the Interest of Z.W., et al.*, 710 A.2d 1176, 1178 (Pa. Super. 1998). *See also In re Tameka M.*, 525 Pa. 348, 354, 580 A.2d 750, 753 (1990) (stating, "[i]n ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, . . . rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests.") (quoting *In re Lowry*, 506 Pa. 121, 484 A.2d 383 (1984)).

Following an examination and findings of factors provided in 42 Pa.C.S. § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also find that DHS has met its burden that a modification of placement is in Child's best interests. *See* 42 Pa.C.S. § 6351(g).

Here, DHS presented concerns relating to Paternal Grandmother's long-term health issues and finances. DHS also presented concerns relating

to Paternal Grandmother's adult daughter, C.C., and her role in caring for Child, and concerns relating to police activity at the home in June of 2015. N.T., 8/7/15, at 8-13, 21-24, 34-35. Critically, the evidence indicated that Paternal Grandmother did not promptly report the police incident to the appropriate agency, and only mentioned it to the adoption caseworker several days later, when she was present for adoption training. *Id.* at 13-14, 23-24, 29-31.

Additionally, Paternal Grandmother subsequently failed to appear for a parenting capacity appointment scheduled for the end of July 2015. N.T. 8/7/15, at 14, 24. As a result, the adoption caseworker was unable to approve the family profile. *Id.* at 8. DHS further presented evidence relating to the family's lengthy history with DHS dating back to 1996, the criminal history of the family, and Paternal Grandmother's having multiple Social Security numbers, dates of birth and reported birth locations. *Id.* at 19-21, 28, 33, 38-41. Based on this evidence, we would have no hesitation in affirming the Master's finding and recommendation, adopted by the trial court, that Child's removal from the home was in his best interests. *In the Interest of Z.W.*; *see also In re Tameka M.*

Accordingly, based on the foregoing analysis, we dismiss the appeal.

Appeal dismissed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2016